IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>VINCENT PALERMO,<br><br>Defendant. | **8:19CR108**<br><br>**DETENTION ORDER** |
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>VINCENT PALERMO,<br><br>Defendant. | **4:23CR3052** |

Defendant is charged violating the terms of his supervised release and faces a new indictment alleging crimes of fraud. The government moved for Defendant's detention, stating Defendant's release would pose a risk of harm to the public, nonappearance, and obstruction of justice. As to the supervised release violation, Defendant bears the burden of proving his release would not pose a risk of harm, nonappearance, or obstruction of justice. As to the new indictment, the government bears the burden of proof.

Based on the grand jury's findings, the court finds Defendant's release poses a serious risk of obstruction or attempted obstruction of justice, and of actual or attempted intimidation of witnesses. The court therefore convened a hearing on the government's motion for detention as to both of the above-

captioned cases. See 18 U.S.C. 3142(f)(2). Defendant was represented by his retained counsel, and he was afforded the opportunity to cross-examine the government's witness, call his own witnesses, proffer information, and testify himself if he chose to do so. After considering the information presented, the court finds the defendant must be detained pending trial. With defendant's consent, the evidence adduced at that hearing also serves as the preliminary hearing on the supervised released Petition.

A pretrial services report outlining Defendant's history and characteristics was prepared and received by the court. See 18 U.S.C. § 3142(g)(3). Based on that report, Defendant has lived in Omaha his entire life, and his family lives in Omaha. Defendant serves on the Omaha City Council. He was previously convicted on a charge of failing to file a tax return and was still on supervised release during the time period for the events alleged in the 2023 indictment. He has no physical or mental health issues, and he is not addicted to drugs or alcohol. He was arrested for domestic assault, but that charge was dismissed.

In addition to the information provided by pretrial services, the court must consider the nature and seriousness of the crime charged, the weight of the government's evidence, any facts indicating a risk of flight or obstruction of justice, and the nature and seriousness of the danger to the community or any person if the defendant is released. 18 U.S.C. § 3142(g)(1-2). The government presented substantial evidence on these issues. Based on the court's docket, and the wire taps of record, the context of which was explained by the government's testifying agent, the court finds the following for the purposes of this detention hearing only:

On December 19, 2019, Defendant was sentenced to a term of four years of probation on three counts of failing to file a tax return. As relevant to this order,

pursuant to Defendant's terms of probation, Defendant was not to commit a local, state, or federal crime while on probation, and he was not to leave the District of Nebraska with the prior authorization of the court or his probation officer.

Federal law enforcement officers were (or appeared to be) investigating the tax returns (or lack thereof) of Jack Olson, a fundraiser for LPOA.  Ultimately, what Defendant suspected to be a tax investigation of Olson was actually or became an investigation of Defendant's financial disclosures and possible kickbacks. The investigating officers were evaluating whether Defendant failed to disclose monetary amounts received from LPOA in his Statement of Financial Interests filed with the Nebraska Accountability and Disclosure Commission. When Defendant realized the true intent of the federal investigation, he commented "[T]hey're investigating for kickbacks. Which means someone's a . . . rat." Court Ex. 1, at p. 102.

The officers discovered Defendant, (along with the codefendants and others) had taken trips to Las Vegas, San Diego, and Houston that were funded by donor contributions to the LPOA. Court Ex. 1, at pp. 129-30, 140. The Las Vegas trip occurred in early 2019—before Defendant was on probation. But the Houston trip occurred in 2021 and the San Diego trip occurred in 2022, neither of which were reported to Defendant's probation officer. Court Ex. 1, at pp. 64, 141, 142. While on a trip to San Diego, Defendant was part of a group (which included at least one codefendant) that beat up a lone victim. The victim was punched and thrown against a refrigerator. Defendant's knuckles were bloodied by the fighting. Court Ex. 1, at pp. 10-11. The fight was not reported to law enforcement.

Defendant realized the law enforcement officers would find his unreported trips, (Court Ex. 1, at pp. 134-38), and he was convinced that their interest in looking meant there was "a . . . rat."  Court Ex. 1, at p. 136. The officers also

3

discovered that Defendant submitted a PPP loan application using false information regarding his percent ownership of Vinny's Tree Service. Witnesses were subpoenaed to appear before the grand jury.

Defendant believed his financial web was unravelling. Court Ex. 1, at p. 144. He contacted subpoenaed grand jury witnesses and instructed them on how to testify, explaining that only three responses were acceptable: "Yes," "No," and "I don't know."  "[I]f you don't stick with them 3 next week, you gonna cause problems for all of us." Court Ex. 1, at p. 99. On April 19, 2023, Defendant was indicted on the charges listed in both the indictment and the Petition for Warrant or Summons for Offender Under Supervision.

Based on the foregoing facts of record, the court finds there is probable cause to support the Petition. The court further finds that Defendant has failed to meet his burden of proving that his release would not pose a risk of harm to the public, nonappearance, or obstruction of justice. To the contrary, there is clear and convincing evidence of risk of harm to the public and of obstruction of justice.

The court has considered whether conditions of release, or a combination of such conditions, would sufficiently ameliorate the risk posed by Defendant's release. Since the Defendant used verbal communications to coach the grand jury witnesses, and such communications could be made not only in person, but by telephone, and perhaps email and social media, the court would need to create a condition that adequately prohibited such communications. Even if I prohibited Defendant from having access to a phone, Defendant could nonetheless use others' phones or burner phones despite being under careful supervision. Defendant has already shown he is willing to disobey court ordered conditions of supervision. Defendant's conduct provides no basis for trusting the

Defendant to comply with a court order prohibiting his intimidation of witnesses and his efforts to coach or orchestrate their testimony.

The court therefore finds, by clear and convincing evidence, that no conditions or combination of conditions of release would sufficiently lessen the risk of danger and obstruction of justice posed by Defendant's release pending trial. Defendant will be detained.

## Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. The defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to the United States marshal for a court appearance.

Dated this 28th day of April, 2023.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

5